# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 09-CV-2022 (JFB) (WDW)

———————————

ROY TUCCILLO, an individual,

Plaintiff,

VERSUS

GEISHA NYC, LLC, doing business as JAPONAIS
and OSSS HOSPITALITY NYC LLC,

Defendants.

———————————

MEMORANDUM AND ORDER
July 22, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Roy Tuccillo brought the instant action against defendants Geisha NYC, LLC, doing business as Japonais ("Geisha NYC"), and OSSS Hospitality NYC, LLC ("OSS"), under the Lanham Act for trademark infringement regarding defendants' use of a registered trademark in connection with its restaurants, described in detail *infra* (hereinafter, the "JAPONAIS mark"). Geisha NYC, OSS, and additional counterclaim plaintiff Geisha, LLC (collectively, "Geisha") have asserted counterclaims for, *inter alia*, cancellation of plaintiff's registration of the JAPONAIS mark that is the subject of this litigation, pursuant to 15 U.S.C. § 1119, trademark infringement pursuant to 15 U.S.C. §

1125(a), trademark dilution pursuant to 15 U.S.C. § 1125(c), and unfair competition under New York common law. Geisha seeks a preliminary injunction that would enjoin Tuccillo from using the JAPONAIS mark in connection with restaurant and lounge services until a final determination is made on the merits of their counterclaims.

The Court held an evidentiary hearing on the motion for a preliminary injunction on July 7, 2009, which was continued to July 8, 2009, and after which the parties submitted written briefing. At the preliminary injunction hearing, the parties had the opportunity to examine witnesses and present documentary evidence. Following the hearing, Geisha NYC and OSS made a motion

to add Geisha LLC as a necessary counterclaim plaintiff, as well as additional counterclaims. The Court granted those motions on the record, following oral argument on July 16, 2009. The parties subsequently agreed on the record that it was not necessary to re-open the preliminary injunction hearing, and consented to the Court adjudicating the preliminary injunction hearing upon the record of the hearing and submissions made to date. The parties submitted additional briefing by letters dated July 20, 2009, which were also considered by the Court.

Having carefully reviewed the evidence and assessed the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law, pursuant to Rules 52(a) and 65 of the Federal Rules of Procedure, and grants the motion for a preliminary injunction, according to the specifications dictated at the conclusion of this Memorandum and Order.

The lawsuit centers around Tuccillo's purported use of the JAPONAIS mark at what he claims to have been a restaurant and lounge located at 28 Urban Avenue in Westbury, New York. In particular, although Tuccillo claims that his statements to the United States Patent and Trademark Office – namely: (1) in June 2004, that he was unaware of anyone else using the JAPONAIS trademark; and (2) in May 2008, that he had been using the JAPONAIS trademark in connection with restaurant and lounge services at 28 Urban Avenue since April 1, 2008 – were both true, the Court finds that Tuccillo's evasive testimony and other evidence on these issues was completely lacking in credibility and that Geisha has demonstrated in overwhelming fashion that these statements were patently false. In particular, as set forth in more detail below, the Court's conclusion is based upon, among other things, the following: (1) Tuccillo's explanation as to why he decided to use "Japonais" (the French word for

"Japanese") to describe his infused calamari and other food items in a restaurant, including his statement that he used the French word because he sells "french fries," was completely incredible; (2) Tuccillo's explanation as to how he re-developed the unique letter styling for the JAPONAIS mark, including that he drew it by hand, was utterly lacking in credibility and undermined by defendants' compelling expert testimony; and (3) Tuccillo's explanation, in connection with his attempt to register an unrelated mark, that he did not knowingly copy the unique logo for the Fulton Street Lobster & Fish Company, was simply absurd.

Moreover, although Tuccillo claims that he was running this restaurant and lounge at the 28 Urban Avenue location in the 1,200 foot area that had two tables (which was also the same location of an independent sandwich business called the "Sandwich Spot") from 11 a.m. to 3 p.m. on Monday through Fridays since April 1, 2008, that claim is completely undermined by, among other things, the following: (1) the lack of any advertising or business directory listing for this purported restaurant; (2) the lack of any sales records that can be directly attributable to this restaurant, as opposed to plaintiff's many other businesses; (3) the lack of any permit from the Nassau County Board of Health until March 19, 2009; (4) the telephone number listed on the paper menus, which Tuccillo claims is "proof" that the restaurant existed, is answered "frozen foods" (which is related to plaintiff's other companies); and (5) on March 23, 2009, at a time that plaintiff claims the restaurant was open for lunch (between 11:45 a.m. and 12:15 p.m.), an investigator for Geisha took photographs of the "restaurant" which had a "closed" sign, no employees in the store, and no food or customers anywhere in sight. Tuccillo's only indicia of use of the

word "Japonais" is the purchase of signs, which is hardly indicative of a functioning restaurant utilizing the mark in commerce, and the lack of a *bona fide* restaurant under the JAPONAIS trademark was clear from the other evidence in the record. In short, Tuccillo's incredible testimony regarding the restaurant's purported operation under the JAPONAIS trademark (and the testimony of his other witness) is completely undermined, not only by the testimony's own internal inconsistencies and facially incredible explanations, but also by the complete lack of the basic indicia of a functioning, *bona fide* restaurant operating under the JAPONAIS name, as well as the compelling evidence submitted by Geisha that credibly contradicts Tuccillo's testimony on the critical issues related to defendant's counterclaims.

In contrast to the testimony and evidence submitted by Tuccillo, Geisha submitted compelling evidence as to its creation and development of the JAPONAIS mark in 2003 in connection with the opening and operation of a Japanese fusion restaurant in Chicago, and its subsequent opening of restaurants in New York City and Las Vegas in 2006. Moreover, Geisha demonstrated at the evidentiary hearing in an overwhelming fashion that Tuccillo's statements to the USPTO were false and that he submitted the registration with the JAPONAIS mark copied from the defendants in a bad faith effort to "squat" on the mark in order to capitalize on Geisha's failure to register the mark. Thus, Geisha demonstrated a likelihood of success on its counterclaims for cancellation of Tuccillo's registration of the JAPONAIS mark because of the false statements to the USPTO by Tuccillo and on its trademark infringement claim as the senior user of the mark. Geisha also showed that irreparable harm will occur to its restaurant business in the absence of a preliminary injunction. Accordingly, as discussed in detail below,

Geisha has satisfied all of the requirements for a preliminary injunction and such an injunction is warranted under the circumstances of the instant case.

## I. BACKGROUND

Before proceeding to delineate the Court's Findings of Fact for the purposes of Rule 52(a), the Court begins by providing asummary of the instant matter and the foundation of the factual dispute between the Parties.

### A. The Mark

The controversy in the instant case involves a dispute over the rightful owner of the "JAPONAIS mark," within the New York metropolitan market. The JAPONAIS mark is comprised of a stylized version of the word "Japonais"–which is the French-language word for Japanese–in which the two occurrences of the letter "A" have their crossbars removed, such that they appear to be upside down versions of the letter "V." The parties do not dispute that the stylized JAPONAIS includes the initial letter "J" as extending below the bottom reaches of the other letters in the word.

The parties also do not dispute that the JAPONAIS mark as used by counterclaim plaintiffs and used and registered by Tuccillo with the United States Patent & Trademark Office ("USPTO") are identical. However, their stories regarding their respective alleged creation and uses of the mark diverge, and are the foundation of the instant litigation. The Court proceeds to describe the basic allegations in the parties' respective pleadings and other submissions in order to frame the dispute.

## B. Tuccillo's Allegations

Tuccillo claims that he used the word "Japonais" to market an infused frozen calamari product before 2000, which he sold to supermarkets and at food shows. (Preliminary Injunction Transcript, dated July 7-8, 2009, at 144-45 (hereinafter "Tr.")) He further claims that sometime in 2000, he developed the JAPONAIS mark by hand, and installed a window sign incorporating the mark on a building he owns located at 28 Urban Avenue, in Westbury, NY. (Tr. at 139, 142-44. 191-92.) On June 25, 2004, Tuccillo filed an "intent-to-use" ("ITU") application with the USPTO for the JAPONAIS mark in connection with "restaurant and lounge services." (Complaint ¶ 4 (hereinafter ("Compl.").) Tuccillo received a "notice of allowance" from the USPTO on August 23, 2005, and alleges that he opened his restaurant under the JAPONAIS mark at 28 Urban Avenue on April 1, 2008. (Compl. ¶¶ 12-13.) On May 2, 2008, Tuccillo filed a verified "statement of use" ("SOU") application with the USPTO, in which he swore that he was using the mark in commerce in connection with restaurant and lounge services. (Compl. ¶ 14.) On March 17, 2009, Tuccillo obtained the registration for the JAPONAIS mark from the USPTO, under registration number 3,591,621.

## C. Geisha's Allegations

Geisha claims that the JAPONAIS mark was created by Geisha, LLC in 2003 with the assistance of a graphics design firm, in connection with the opening and operation of a Japanese fusion restaurant in Chicago, Illinois under the name Japonais (Amended Answer, Affirmative Answer and Counterclaims of Defendants Geisha NYC, LLC d/b/a/ JAPONAIS and OSSS HOSPITALITY NYC, LLC, ¶¶ 7-8 (hereinafter, "Counter Compl.").) Geisha alleges that the restaurant quickly gained

a reputation following its 2003 opening as being a top restaurant in Chicago and generated national publicity. (Counter Compl. ¶ 14.) Based on the overwhelming success of the Chicago restaurant using the JAPONAIS mark, the founders opened other Japonais restaurants in New York City and Las Vegas, Nevada in 2006, and currently have publicized plans to open another restaurant in Atlanta, Georgia in October 2010. (Counter Compl. ¶ 14.) The restaurants formed in other cities are all owned by separate legal entities, but are all authorized to use the JAPONAIS mark by Geisha LLC, who Geisha alleges is the rightful owner of the mark. (*Id.*)

Geisha alleges that Tuccillo acted in bad faith with the USPTO in order to "squat" on the JAPONAIS mark, after he realized that Geisha, LLC had failed register the mark. (Counter Compl. ¶ 29.) They allege that Tuccillo copied the mark in 2004 in connection with his ITU application, and made false declarations because he was aware of Geisha LLC's use of the JAPONAIS mark at the time of filing. (Counter Compl. ¶¶ 25.) Geisha alleges that Tuccillo also made false statements in connection with his SOU application to the USPTO, because he did not actually operate a restaurant using the JAPONAIS mark when he filed the statement. (Counter Compl. ¶¶ 26-28.)

## D. Related Litigation

On September 26, 2005, Geisha LLC, filed a civil action under the Lanham Act against Tuccillo in the United States District Court for the Northern District of Illinois before the Honorable Rebecca R. Pallmeyer, captioned *Geisha LLC v. Tuccillo*, 05-CV-5529. Geisha LLC moved for summary judgment on its claim of trademark

infringement, which was denied by Memorandum and Order dated March 13, 2009. *See Geisha LLC v. Tuccillo*, No. 05-CV-5529 (RRP), 2009 WL 674360 (N.D. Ill. Mar. 13, 2009). By Order dated July 7, 2009, Judge Pallmeyer dismissed the action without prejudice, noting that the case would be reinstated, if appropriate, following completion of a cancellation proceeding before the Trademark Trial and Appeal Board which was filed by Geisha LLC regarding the JAPONAIS mark on March 23, 2009.

## II. FINDINGS OF FACT

After reviewing the testimony and documentary evidence, the Court makes the findings of fact discussed below. As an initial matter, the Court would like to highlight that in making its factual findings, it found Mr. Tuccillo's testimony to be completely lacking in credibility on all the critical disputed issues in this litigation, and in fact, at many points absurd. Although the Court has taken great care to delineate specific contradictions and doubts about elements of Mr. Tuccillo's testimony within the findings of fact below, the Court notes that he was both effectively impeached on cross-examination and lacked any witnesses, documents or other corroborating evidence for critical elements of his testimony. The testimony of Mr. Tuccillo stood in sharp contrast to the well-developed, credible factual record presented by Geisha to support its claims, which included competent evidence that indicated a history of dishonesty by Mr. Tuccillo before the USPTO.

## A. Japonais – Chicago Location

In 2003, Chicago-based restaurateur Miae Liam started developing a concept for a new restaurant in a new development complex, along with partner Rick Wahlstedt. (Tr. at 58-60.)

Liam already had success opening and operating a sushi restaurant, Mirai Sushi, and an Asian fusion restaurant, Obha, in Chicago. (Tr. at 57.) A developer asked her to get involved in a new restaurant project, who told Liam that he was looking for something "edgy," "contemporary," and "up and coming." (Tr. at 59-60.) Liam and Wahlstedt began to develop a concept for a restaurant that involved traditional Japanese food made with European techniques, with "European elegance." (Tr. at 61.) As part of these efforts, Liam and Wahlstedt formed Geisha LLC, which was the managing company that raised money for opening the restaurant in Chicago. (Tr. at 63.) Geisha, LLC raised over $2.8 million to open the Chicago restaurant, which included a $2.1 million investment from the landlord developer, and $700,000 from other investors. (Tr. at 63.)

Geisha LLC, through Liam, expended great effort in developing a name and trademark for the new Chicago restaurant. (Tr. at 63-64.) In developing a name for the concept, they sought a name which captured the fact that the restaurant would offer Japanese food with strong European influence, and settled on "Japonais," which is the French word for Japanese. (Tr. at 61-62.) Two different graphic design firms were retained to develop a mark for the Japonais restaurant during 2003. (Tr. at 63-64.) By April 2003, Geisha LLC had registered a domain name incorporating the Japonais name, and received concept sketches for a logo using the name. (Tr. at 65-67; Def.'s Ex. 4.) They finally settled upon the JAPONAIS mark, and created a banner that incorporated the JAPONAIS mark, which announced that the restaurant would be opening in May 2003. (Tr. at 67.)

Japonais Chicago finally opened in September 2003 to great publicity and critical acclaim. Chicago-based newspapers and magazines, including the *Chicago Sun-Times* and *Chicago Tribune*, covered the opening and gave positive reviews. (Tr. at 67-68; Def.'s Ex. 16.) The opening also generated significant publicity in national publications, including an article in *Condé Nast Traveler,* was rated by *Bon Apétit* magazine in January 2004 as the "Best Scene" in Chicago, and has since been depicted in various publications as a "hot spot" attended by celebrities such as actor Vince Vaughn and actresses Jennifer Aniston and Cameron Diaz. (Tr. at 69; Def.'s Ex. 17.)

## B. Tuccillo Submits Intent to Use Application to USPTO

On June 25, 2004, Tuccillo filed an ITU application with the USPTO to register the JAPONAIS mark for "lounge and restaurant services." (Tr. at 190-91; Def.'s Ex. 1.) At the time he made the application, he was aware of the use of the mark in connection with the Japonais restaurant in Chicago and copied the JAPONAIS mark as part of the application.[1]

[1] As part of reaching this finding of fact, the Court credits the testimony of Geisha's expert in logo development, Mr. James Lienhart, who provided compelling testimony that the JAPONAIS mark used by Geisha LLC as part of the Chicago restaurant and the one submitted by Mr. Tuccillo were *identical*, and one had to necessarily be copied from the other. (Tr. at 17-18.) One had to be a copy, and the Court finds that Geisha, LLC created the original, because of Ms. Liam's credible testimony regarding the history of the development of the mark. (Tr. at 63-67.) On the other hand, the Court rejects Mr. Tuccillo's testimony that he created the JAPONAIS mark that was submitted as part of his ITU application as incredible. (Tr. at 191-92.) *First*, Mr. Tuccillo claimed that he drew the sample submitted to the USPTO by hand, with the assistance of a ruler, which the Court finds incredible given Mr. Lienhart's credible testimony that the sample submitted by Mr. Tuccillo was an "exact copy" of the logo used by the Japonais restaurant in Chicago and an exact replica of the "Gill Sans" font type with the cross bars in the "A" characters removed (Tr. at 14-18); in the opinion of the expert, Mr. Tuccillo would have had to have been an "expert calligrapher" to replicate the Gill Sans font by hand (Tr. at 18-19), and Mr. Tuccillo admitted that he had no artistic training during cross-examination. (Tr. at 194-95.) *Second*, the Court further notes that Mr. Tuccillo's self-serving testimony that he was using the JAPONAIS mark for the extensive sale of frozen calamari since 2000 at food shows, to supermarkets and retail customers (Tr. at 144-46), was not corroborated by any evidence, including a single sales receipt, document or even another corroborating witness, and his testimony was not credible. In fact, the only piece of corroborating evidence concerning use of the name "Japonais" prior to 2004 is a 2000 invoice from a sign store, which indicates that window lettering was ordered, but which has no indication that it involved the stylized JAPONAIS mark. (Tr. at 142-44; Pl.'s Ex. 10.) *Third,* in contrast to Ms. Liam's coherent and logical testimony as to the reasons for adopting the trade name and mark, Mr. Tuccillo was flustered when asked why he chose the *French* word for Japanese as a name for his frozen calamari product, providing alternative fumbled answers that he liked the name after he went to a Japanese restaurant called "Japonais" in Paris, that his infused calamari was cooked in a French "creamy and marinated" style, and that he had incorporated *french* fries into his menu and that "all through Paris and all through France and through London, french fries is a very popular item . . . Even in the Japanese restaurants in France, your Honor, they have French fries coming over with the order." (Tr. at 218-23.) *Fourth,* the Court finds Mr. Tuccillo's testimony incredible given a previous incident, which is discussed in more detail *infra,* in which competent evidence indicates that he intentionally copied a logo in use by another party, FULTON STREET FISH COMPANY and attempted to register the mark, which was ultimately rejected by the

Tuccillo signed the ITU application, which included an affirmation asserting that:

> . . . to the best of my knowledge and belief, no other person, firm, corporation or association has the right to use said mark in commerce, either in identical form or in such near resemblance thereto as may be likely, when applied to the services of such other person, to cause confusion, or to cause mistake, or to deceive . . .

(Tr. at 190-91; Def.'s Ex. 1.) The Court finds that the overwhelming weight of the evidence indicates that Tuccillo signed this statement, despite the fact thats he was aware that Geisha had used the JAPONAIS mark in connection with its nationally-publicized restaurant in Chicago.[2]

------

USPTO.

[2] On July 20, 2009, Tuccillo submitted additional evidence to the Court, including registration forms for food shows and conventions, including one in Chicago in May 2003. (Tucillo's Ltr. dated July 20, 2009, Ex. A.) The Courts finds that the additional evidence does not impact its findings of fact, as the additional evidence in no way indicates in any way that the JAPONAIS mark was exhibited at the shows, and do not contain even a single reference to the word "Japonais." Tuccillo suggests that the food shows may have provided Liam with access to his alleged use of the JAPONAIS mark from which she may have copied the mark, which the Court rejects as incredible. The Court notes that if anything, Tuccillo's presence in Chicago for the May 2003 food conference may have given him access to Geisha's use of the JAPONAIS mark, through the banner Geisha posted in the city which announced Japonais' opening, which incorporated the mark. (Tr. at 66-67; Def.'s Ex. 5.)

This was not the first time that Tuccillo had attempted to register a mark that was identical or virtually identical to another party's mark. On November 24, 2003, he submitted an ITU to the USPTO for use of an oval logo including the name "Fulton Street" across the top of the oval, the phrase "Seafood Co. Inc.," across the bottom of the oval, a drawing of a lobster tail in the center, the phrase "New York," to the left of the lobster tail, and the phrase "since 1956," to the right of the lobster tail (hereinafter, "FULTON STREET FISH COMPANY" mark) (Tr. at 42-43, 182-83; Def.'s Ex. 11.) Tuccillo's attempt to register the FULTON FISH STREET COMPANY was rejected by the USPTO by an Office Action, which found, *inter alia*, that the mark was confusingly similar to another mark, citing USPTO registration No. 2,458,713. (Tr. at 43-44; Def.'s Ex. 12.) That registration, belonging to the Fulton Street Lobster & Seafood Co., is for an extremely similar logo, which shares common or strikingly similar elements of an oval, containing the words "Fulton Street" across the top of the oval, "Lobster & Seafood Co." across the bottom of the oval, "NY" on the left and right hand sides of the oval, a drawing of an almost identical lobster tail in the center, and an inscription "family owned since 1956" under the lobster tail drawing.[3]

------

[3] The USPTO found the mark that Tuccillo was attempting to register was confusingly similar to that owned by the Fulton Street Lobster & Seafood Co. Inc., specifically noting the following:

> The "packaged seafood and lobster tails" identified in cited Registration No. 2458713 are legally identical to the "packaged seafood" identified in the instant application. The dominant literal name FULTON STREET SEAFOOD CO. INC. in the applicant's mark is virtually identical

(Def.'s Ex. 13.) Plaintiff made a similar affirmation to the USPTO that he was not aware that any other party had the right to use the FULTON STREET FISH COMPANY mark in commerce, although he was aware that a substantially similar mark was being used at the time of the application by the Fulton Street Lobster & Fish Company, and copied the mark as part of the application.[4]

to the entire typed form FULTON STREET LOBSTER & SEAFOOD CO. mark in the cited registration. The omission of the generic term LOBSTER in the applicant's mark and substitution of the highly suggestive LOBSTER design, the addition of the generic business entity term INC. and the non-distinctive common geometric oval background design, and the addition of the merely descriptive terms NEW YORK and SINCE 1956 in the applicant's mark do not overcome the essentially identical commercial impressions conveyed by the respective marks here at issue.

(Def.'s Ex. 12.)

[4] As part of making this finding of fact, the Court rejects as incredible Mr. Tuccillo's testimony that he or his mother independently created the FULTON FISH STREET COMPANY mark (Tr. at 183) and that he was not aware that any other party was using the mark at the time that he submitted the ITU application to the USPTO. (Tr. at 189.) *First,* as with the JAPONAIS mark, it was so closely identical to the mark registered by the Fulton Street Lobster & Fish Co., that the Court finds that one had to have necessarily copied the other. (Def.'s Ex. 11.) *Second,* Mr. Tuccillo testified inconsistently at the preliminary injunction hearing and a deposition that he appeared in as part of the related litigation in the Northern District of Illinois, testifying before this Court that his mother created the FULTON FISH STREET COMPANY mark by hand, but stating at his deposition that he personally designed the mark by hand. (Tr. at 183-85; Def.'s Ex. 33.) *Third,* Mr. Tuccillo's testimony that he included the phrase "Since 1956" as part of the mark for

(Def.'s Ex. 11.) Tuccillo continues to use the FULTON STREET FISH COMPANY to

"aesthetic reasons" and because he had a picture dated 1956 of his uncle in a paper bag hat at the Fulton Fish Market was incredible, particularly in light of his admission that he had owned the relevant company only since approximately 1984. (Tr. at 186.) The Court finds absurd Mr. Tuccillo's suggestion that he independently and coincidentally invented a substantially identical logo to that employed by the Fulton Street Lobster & Seafood Company, including, in particular, the reference to year 1956, which was arbitrary as far as his own business was concerned. This testimony is highly probative for impeachment purposes, as well as on the issue of intent and knowledge, pursuant to Rule 404(b) of the Federal Rules of Evidence, and satisfies the balancing test under Rule 403 of the Federal Rules of Evidence. *See, e.g., Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (noting on issue of willfulness in trademark suit that defendants had been sued in trademark infringement case in the past); *See Johnson & Johnson Consumer. Cos., Inc., v. Aini*, 540 F. Supp. 2d 374, 392 n.31 (E.D.N.Y. 2008) (history of trademark infringement actions against defendants admissible as evidence of intent and knowledge under Rule 404(b)); *see also United States v. Sparkman*, 500 F.3d 678, 683-84 (8th Cir. 2007) (prior instances of insurance fraud admissible to show intent to commit charged fraud under Rule 404(b)). On the issue of credibility, Geisha also questioned Tuccillo about the following: (1) Tuccillo was convicted in December 1999 for conspiracy to defraud the Internal Revenue Service (Def.'s Ex. 21); and (2) the Honorable Magistrate Judge Michael L. Orenstein found Mr. Tuccillo's sworn statements in a separate lawsuit were not credible in finding that a company controlled by Mr. Tuccillo, Anchor Seafood, "acted with actual intent to defraud plaintiff in the forgiveness of the Tuccillo loan." (Def.'s Ex. 22.) However, the Court did not rely on these additional impeachment materials because the Court found plaintiff to be not credible for all the other reasons discussed.

market his seafood products to date. (Tr. at 189.)

The overwhelming weight of the evidence has convinced the Court that Tuccillo submitted the registration with the copied JAPONAIS mark to "squat" on the mark in order to capitalize upon Geisha's failure to register the mark following the successful opening of the Chicago restaurant and take advantage of the goodwill and reputation built up by Geisha in the JAPONAIS mark, which he also tried to do unsuccessfully with the FULTON FISH STREET COMPANY mark.

## C. Japonais – New York and Other Locations

During 2006, Liam opened a Japonais location in New York City. (Tr. at 70-71.) The New York location was managed by counterclaim plaintiff Geisha NYC, a separate legal entity but an affiliate of Geisha LLC, which raised close to $6.3 million from approximately 25 investors to open the New York location. (Tr. at 71.) Geisha NYC was authorized to use the JAPONAIS mark by Geisha LLC, and used the mark extensively in connection with the Japonais restaurant in New York. (Tr. at 71.)

In the same year, Geisha LLC, entered into an agreement with the Mirage Hotel and Casino in Las Vegas, Nevada, pursuant to which the Mirage was licensed to fund and operate a restaurant under the JAPONAIS brand. (Tr. at 72.) As with the opening of the original location in Chicago, the openings in New York and Las Vegas generated significant publicity. (Tr. at 72; Def.'s Exs. 18 & 19.) Geisha currently has plans to open and operate another Japonais restaurant in the Atlanta, Georgia metropolitan area. (Tr. at 72.)

Geisha has invested over two million dollars in promoting its restaurants under the JAPONAIS mark, and Ms. Liam believed the mark to be critical to the restaurant's reputation and goodwill. (Tr. at 73.) Approximately twenty million dollars overall has been invested into the Japonais restaurants in Chicago, New York and Las Vegas. (Tr. at 82.)

## D. Tuccillo Submits Statement of Use Application to USPTO

On May 2, 2008, Tuccillo filed a SOU with the USPTO, in which he attested to the fact that he was currently using the JAPONAIS mark in connection with restaurant and lounge services, and had been using it in such a manner as of April 1, 2008. (Tr. at 30-31, 197-98; Def.'s Ex. 2.) The Statement of Use included, as exhibits, a photograph of a window sign that used the JAPONAIS mark, as well as a copy of a menu using the mark. (Tr. at 152-52; Def.'s Ex. 2.) The menu listed the address 28 Urban Avenue, Westbury, NY, 11590, noted that the restaurant was open from Monday through Friday, 11 a.m. to 3 p.m., and listed (516) 333-6344 as the telephone number for the establishment. (Def.'s Ex. 2.) However, Tuccillo did *not* in fact operate a restaurant and lounge using the JAPONAIS mark as of April 1, 2008 or even at the date of the application.[5]

---

[5]   In making this finding of fact, the Court necessarily rejects as against the substantial weight of the evidence Mr. Tuccillo's testimony that he operated a restaurant under the JAPONAIS mark as of April 1, 2008, as he attested to in the Statement of Use. (Tr. at 153-54, 198; Def.'s Ex. 2.) Although the Court's findings of fact regarding the actual use of the space at 28 Urban Avenue that Mr. Tuccillo alleges was used for the Japonais restaurant is chronicled in more detail

The Court finds that at the time of the Statement of Use application, Tuccillo did in fact put the window lettering using the JAPONAIS mark at 28 Urban Avenue, but did not operate a restaurant and lounge at that location. However, the window sign was installed contemporaneously with, and solely for the purpose of the SOU application to the USPTO.[6]  Tuccillo had in fact owned the premises at that address for many years, from which he ran a number of businesses operating under different names, in the frozen seafood business.[7] (Tr. at 136-37.) In June of 2008, Tuccillo met with Haim Vaizman, and agreed to let him operate a sandwich establishment out of 28 Urban Avenue, called the "Sandwich Spot." (Tr. at 98-100, 159-60.) Vaizman filed an application for a permit to operate his establishment with the Nassau County Board of Health on February 9, 2009, which reflected an ownership date of October 8, 2009, and reported that the location had zero seats.[8] (Tr. at 104-05; Def.'s Ex. 14.) Vaizman started running his sandwich shop out of the location as of October 2008, but

---

*infra*, Mr. Tuccillo's testimony is rejected as incredible by the Court because the overwhelming weight of evidence indicates that: (1) the space was instead used for a sandwich shop in late 2008 through early 2009; (2) Tuccillo did not apply for a permit from the Nassau County Board of Health for a Japonais restaurant at that location until March 19, 2009, an application which reflected a March 18, 2009 date of ownership; (3) no permit for *any* type of food establishment at 28 Urban Avenue was submitted before February 9, 2009, which was for "The Sandwich Spot," which reflected an ownership date of October 8, 2008; (4) as of March 23, 2009, there was no listing for the Japonais restaurant at 28 Urban Avenue in any directory, and the telephone number listed on the menu forwarded to a generic line which was answered "frozen foods"; and (5) Mr. Tuccillo's lack of *any* receipts or other corroborating documentary evidence of sales under the JAPONAIS mark or "Japonais" name in any form.

[6]  The Court rejects Mr. Tuccillo's testimony that the window lettering was installed as of 2000. Although Tuccillo submitted into evidence a receipt from Advanced Sign & Graphics dated December 4, 2000 which included a reference to "window lettering" and the term "Japonais," the Court notes that there is no indication that it was for the stylized JAPONAIS mark. (Pl.'s Ex. 10.) In any event, the Court finds Mr. Tuccillo's testimony and evidence regarding first use of the window lettering in 2000 incredible given its previous factual findings that Tuccillo copied the JAPONAIS mark as created by the design firms retained by Geisha and did not independently create it, see *supra* at note 1, and therefore could not have possibly installed the window lettering using a substantially similar mark

until the time that he could have had first accessed, sometime on or after Geisha's first use in 2003.

[7]  Tuccillo admitted that out of 28 Urban Avenue, he ran businesses registered under the names Anchor Frozen Foods, Anchor Fish Company, 32 Urban Avenue, Inc., Anchor Fish Distributors, Anchor Frozen Foods Corporation, Ocean Spray, Prince of the Seas Limited, RS Tuccillo Company, Advanced Frozen Foods, Advanced Food Corporation, Fulton Street Seafood and Diversified Processes, amongst others.  (Tr. at 177-79, 186.)

[8]  Tuccillo claims that he was advised by the Nassau County officials that he did not need to file his own application for a permit because Vaizman submitted one for the same address. (Tuccillo Aff. ¶ 12.)  Even if this was true, the Court notes that there still was no application filed for *any* eating establishment at 28 Urban Avenue that reflected a operations commencement date prior October 8, 2008, that was effective prior to December 3, 2008, or filed prior to February 9, 2009, all of which significantly post-dated April 1, 2008, the date on which he claims he started operations as a restaurant and lounge under the JAPONAIS mark in his SOU statement to the USPTO.

ended up closing the location sometime during March 2009 because of personal health complications. (Tr. at 100-02, 204.)

Between October 2008 and March 2009, the Court finds that the section of 28 Urban Avenue at issue was used *exclusively* by Vaizman to sell sandwiches.[9] By March 23, 2009, the sandwich

store was closed for business, and no restaurant was operating on that date out of 28 Urban Avenue.[10]

### E. Tuccillo Obtains Registration

On March 17, 2009, Tuccillo obtained the registration for the JAPONAIS mark from the UPSTO, under registration number 3,591,621. (Tr. at 151; Pl.'s Ex. 3.) On March 17, 2009, he purchased an awning with the JAPONAIS mark on it, and installed it sometime after

---

[9] The Court rejects Mr. Tuccillo's and Mr. Vaizman's testimony that the approximately 1,200 square foot area was used to jointly operate Japonais and the Sandwich Spot during this time. (Tr. at 100, 107-08, 159, 205.) In reaching this finding of fact, the Court reviewed the photographs of the premises taken by Mr. Carlo Vogel, a private investigator, on March 23, 2009. (Tr. at 32-33; Def.'s Ex. 10.) In these photographs, the area depicted appears to contain a large "submarine" sandwich hanging from the ceiling, and the space is cluttered with the counter and food preparation areas. (Def.'s Ex. 10.) The area plainly does not have space for seating or a lounge area, and the lack of seats is consistent with Mr. Vaizman's February 26, 2009 disclosure to the Nassau County Department of Health that the establishment had zero seats. (Tr. at 105-06; Def.'s Exs. 10 & 14.) In addition, the Court did not find credible the testimony that they were running their businesses simultaneously given the size of the premises, and the fact that the March 23, 2009 photographs of the interior of the premises depict a shuttered sandwich store with no evidence of the JAPONAIS mark on the interior (although it had a sign reading "The Sandwich Shop"), and no indication that it was currently or recently in the business of jointly operating as an Asian fusion restaurant selling infused calamari. (Tr. at 36; Def.'s Ex. 10.) The Court also finds probative the fact that Tuccillo did not apply for a permit from the Nassau County Department of Health to run a restaurant under the name Japonais, reporting available seats that could possibly be utilized for a "lounge," until March 19, 2009. (Tr. at 207-08; Def.'s Ex. 15.) Although Mr. Tuccillo also claimed that the word Japonais appears on a board inside the store, that is not clearly visible to the Court from the photographs, and, in any event, would not change the Court's findings for the same reasons that the

sign on the window does not alter the Court's analysis.

[10] The Court rejects as incredible Mr. Tuccillo's testimony that the premises were actually open for business that day and at that time as a restaurant under the JAPONAIS mark. (Tr. at 155-57, 228.) In making this finding of fact, the Court found credible Mr. Vogel's testimony that the doors were shut between 11:45 a.m. and 12:15 p.m. on that day, a Monday, a sign hung from the door that read "closed," and that he did not observe anyone inside through the windows. (Tr. at 29, 34, 38.) Moreover, as of that date, there was no listing in any business directory for a Japonais restaurant in Westbury, New York, and the telephone number listed on the menu submitted to the USPTO was directed to a telephone line which generically answered "frozen foods." (Tr. at 32, 37.) As of early June, there was still no directory listing for Japonais anywhere in Long Island. (Tr. at 41-42.) In addition, the photographic evidence indicates that the interior of the premises was a shuttered sandwich store only, with a red sign inscribed "The Sandwich Shop," and had a noticeable lack of food. (Tr. at 36; Def.'s Ex. 10.) All the evidence points to a closed establishment, and stands contrary to Mr. Tuccillo's testimony that his Japonais restaurant was prepared to serve customers at that prime lunch hour (the menu submitted before the USPTO and the application submitted to the Nassau County Board of Health indicated that Japonais was only open for lunch, and only on weekdays) if they simply rang the doorbell. (Tr. at 157; Def.'s Ex. 2.)

March 23, 2009. (Tr. at 164; Pl.'s Exs. 5 & 15.) On March 19, 2009, he filed for an application with the Nassau County Department of Health for a permit to run a restaurant called Japonais out of 28 Urban Avenue, effective April 1, 2009. (Tr. at 207-08; Def.'s Ex. 15.) On that application form, he indicated an ownership date for the establishment of March 18, 2009. (Def.'s Ex. 15.) As of some date after March 23, 2009, Tuccillo opened and now operates a restaurant selling infused calamari under the JAPONAIS mark out of 28 Urban Avenue. (Tr. at 165-66; Pl.'s Ex. 15.) Tuccillo's restaurant provides lunch service, catering to the lunch "fast-food" crowd. (Tr. at 82; Def.'s Ex. 10.) On May 12, 2009, Tuccillo filed the instant action alleging trademark infringement against Geisha NYC.

## F. Financial Condition of Japonais - New York

Despite the previous success enjoyed by the Japonais restaurant operated by Geisha NYC, LLC in New York City, the financial condition of the restaurant has been deteriorating. (Tr. at 73-75; Def.'s Exs. 26-28.) Monthly sales have decreased significantly in 2009 as compared to performance a year earlier. (Tr. at 75-76; Def.'s Ex. 28.) In addition, Geisha NYC is currently in default on promissory notes that were issued to make up for a $960,000 shortfall in the build-out of the premises, and has received a demand letter from their landlord which threatens eviction or other legal action if they are not able to make up for arrears in rent of approximately $170,000 by August 1, 2009. (Tr. at 75-77; Def.'s Ex. 32.)

To address the deteriorating financial condition of the New York location, Geisha has consulted with an investment banker to combine the managing companies of the New York and Chicago restaurants into one legal entity, the Japonais Group, which would allow for the stronger performance of the Chicago restaurant to support the current struggles of the New York location. (Tr. at 77-78.) As part of that effort, Geisha is seeking a ten percent (10%) capital call from the New York investors, which would raise approximately $500,000, in order to address the rent and promissory note issues. (Tr. at 78-79.)

Geisha believes that they are under pressure to resolve the status of their rights to the JAPONAIS mark, particularly since Tuccillo obtained the registration and filed the instant litigation, alleging trademark infringement. (Tr. at 80-81.) Geisha further believes that their ability to raise additional capital at this critical juncture for the enterprise is frustrated by the fact that their continued right to use the mark and brand identity, which they have spent six years and millions of dollars developing, is put into doubt by Tuccillo's actions. (Tr. at 81-82.)

## III. CONCLUSIONS OF LAW

### A. Preliminary Injunction Standard

"The preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies.'" *Grand River Enters. Six Nations v. Pryor*, No. 02-CV-5068 (JFK), 2006 WL 1517603, at *16 (S.D.N.Y. May 31, 2006) (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985)). In order to prevail on a motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" *MyWebGrocer, LLC v. Hometown*

*Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotations omitted). A preliminary injunction is not appropriate where monetary damages will serve as adequate compensation. *Id.* "The law in this circuit requires a showing that irreparable damages are likely, not merely possible." *Iron Mountain Info. Mgmt., Inc. v. Taddeo*, 455 F. Supp. 2d 124, 132 (E.D.N.Y. 2006).

## B. Likelihood of Success on the Merits

### 1. Cancellation Claim

Geisha counterclaims for cancellation of Tuccillo's registration of the JAPONAIS mark under 15 U.S.C. § 1119 because it alleges that Tuccillo committed fraud on the USPTO by making false statements in connection with both its ITU and SOU applications. For the reasons stated below, the Court finds that Geisha has demonstrated that it is likely to succeed on the merits of its cancellation claim.

The right for a party to counterclaim for cancellation of a trademark is set forth by 15 U.S.C. § 1119, which provides:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director [of the PTO], who shall make appropriate entry upon the records of the

> Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119; *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008). One proper ground for cancellation is a showing that a registrant committed fraud on the USPTO by making false statements in connection with its registration filings. *Orient Exp. Trading Co., Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1998). To prevail on a cause of action for trademark cancellation on grounds of fraud on the USPTO, it is necessary for the petitioner to demonstrate that the statements "(1) were made with knowledge of their falsity, and (2) were material to the determination to grant the application." *Audiovox Corp. v. Monster Cable Prods., Inc.*, 544 F. Supp. 2d 155, 158 (E.D.N.Y. 2008); *Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc.*, 63 F. Supp. 2d 329, 335 (S.D.N.Y. 1999) (noting that in the context of 15 U.S.C. § 1119 (cancellation of a mark), "[m]isstatements in registration applications will cause cancellation only if they were made with knowledge of their falsity"). Moreover, a petitioner moving for cancellation on the grounds of fraud has the burden to prove the fraud by "clear and convincing evidence.") *Orient Exp. Trading Co.,* 842 F.2d at 653; *Audiovox Corp.,* 544 F. Supp. 2d at 158-59.

The Court finds that Geisha is likely to succeed in demonstrating, by clear and convincing evidence, that Tuccillo committed fraud upon the USPTO based on false statements made in his ITU application in 2004. Specifically, Tuccillo was aware of Geisha's use of the *identical* JAPONAIS mark for the *identical* type of services for which he sought registration—restaurant and lounge services—because, in accordance with the Court's finding of fact, Tuccillo directly

copied the JAPONAIS mark as part of his application. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1211 (11th Cir. 2008) (affirming district court's cancellation of mark where evidence demonstrated that registrant failed to disclose other entities using substantially similar names that it was aware of; finder of fact could infer that reason for concealing the information was that registrant knew that others had right to use mark).[11] It is plain that the existence of another authorized user with the identical mark is material to the USPTO in determining whether to grant the application. *See Mears v. Montgomery*, No. 02-CV-0407, 2004 WL 964093, at *22 (S.D.N.Y. May 5, 2004). Accordingly, Geisha is likely to prevail in its cause of action for cancellation of Tuccillo's registration of the JAPONAIS mark based upon intentional false statements in the ITU application.

The Court further finds that Geisha is likely to alternatively succeed in demonstrating, by clear and convincing evidence, that Tuccillo committed fraud upon the USPTO based on false statements in his Statement of Use application in 2008. Specifically, in accordance with the Court's findings of fact, Tuccillo was not in fact operating a *bona fide* lounge and restaurant under the JAPONAIS mark as of April 1, 2008. The earliest juncture at which Tuccillo operated a restaurant under the JAPONAIS mark at 28 Urban Avenue was after Vaizman occupied it as "the Sandwich Spot" from October 2008 through sometime in March 2009, after Tuccillo's application from the Nassau Board of Health as of March 19, 2009, and after Vogel's investigatory visit to the address on March 23, 2009. Tuccillo was certainly aware that the statement that he was operating the restaurant and lounge as of April 1, 2009 was false, and there can be no dispute that this falsehood was material, given that the statement regarding actual use is the entire purpose of the application to the USPTO. *WarnerVision Entm't, Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 260 (2d Cir. 1996) ("Registration may be granted only if, absent a grant of extension, the applicant files

---

[11] Tuccillo argues that non-disclosure of Geisha's use of the JAPONAIS mark cannot constitute grounds for cancellation based upon fraud on the USPTO, because he only had an obligation to disclose other parties who he believed to have a "*right*" to use the mark, 37 C.F.R. § 2.33(b)(1), and "no obligation, . . . to disclose known users believed to be infringing the applicant's right in the mark." *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (rejecting fraud on the USPTO claim for failure to disclose other known users of mark where registrant "steadfastly" maintained that the other parties did not have a right to use the mark); *see also Haviland & Co. v. Johann Haviland China Corp.*, 269 F. Supp. 928, 937-38 (S.D.N.Y. 1967). Tuccillo, however, has not steadfastly claimed that he retained a good faith belief that Geisha did not have rights in the JAPONAIS mark at the time of his ITU application, but rather has always contended that he was not aware of Geisha's use of it at all at the time, a contention which the Court has found to be not credible, *see supra* at note 1. The Court, as finder of fact at this preliminary injunction stage, has made the factual determination that at the time the ITU application was made Tuccillo intentionally withheld disclosing Geisha's known use of the JAPONAIS mark for the purpose of preventing the USPTO from rejecting his application, and not because of any good faith dispute over the respective parties' rights. *See, e.g., Patsy's Italian Rest., Inc. v. Banas,* 575 F. Supp. 2d 427, 450 (E.D.N.Y. 2008) (upholding jury determination that registrant committed fraud by failing to disclose use of mark by plaintiff to USPTO over registrant's argument that they reasonably believed that plaintiff did not have right to use their marks; jury was entitled to make credibility determination and determine that failure to disclose was intentional); *accord Angel Flight of Ga.*, 522 F.3d at 1211.

a statement of commercial use within six months of the date on which the Commissioner's notice of allowance pursuant to 15 U.S.C. § 1063(b) is issued."); *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) ("The registration of a mark that does not meet the use required is *void ab initio.*"); *see also* 15 U.S.C. § 1051(d) (establishing requirement that applicant submit competent statement of use to USPTO within six months of receiving notice of allowance in order to obtain registration of mark).

Accordingly, Geisha is likely to prevail in its cause of action for cancellation of Tuccillo's registration of the JAPONAIS mark based on intentional false statements in either the ITU or the SOU application.

2. Trademark Infringement Claim

The Court also finds that Geisha has demonstrated that it is likely to succeed on the merits of showing that Tuccillo's use of the JAPONAIS mark is infringing upon Geisha's trademark rights.

Because Geisha has not registered the JAPONAIS mark, and as discussed *supra*, the Court finds that Geisha is likely to succeed on the merits of its claim that Tuccillo's registration of the JAPONAIS mark is invalid and warrants cancellation, the Court proceeds to analyze Geisha's counterclaim for trademark infringement under the framework of the mark being unregistered by either party. Unregistered marks are protected by Section 43(a) of the Lanham Act, which prohibits any person from using:

in connection with any goods . . . or any container for goods, . . . any word, term name, symbol, or device, or any combination thereof . . . which . . . is

likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person.

15 U.S.C. § 1125(a); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992) (citing 15 U.S.C. §1125(a)). In determining trademark infringement under this statute, the court must engage in a two-step analysis: first, it must determine whether the mark is protectable, and then, it must determine whether there is a likelihood of consumer confusion. *Menashe v. V. Secret Catologue, Inc.*, 409 F. Supp. 2d 412, 422 (S.D.N.Y. 2006) (citing *Bristol-Myers Squibb Co.*, 973 F.2d at 1039).

As an initial matter, the Court finds that the JAPONAIS mark is protectable under Section 43(a) of the Lanham Act because, when viewed as a whole, it is inherently distinctive. *Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) ("[T]o establish protectability under § 43(a), a mark must be sufficiently 'distinctive' to distinguish the registrant's goods from those of others . . . [a] plaintiff can establish a mark as distinctive by showing that the mark is 'inherently distinctive,' i.e., intrinsically capable of identifying its source, or by demonstrating that the mark has acquired 'secondary meaning.'"). Although the word "Japonais" is not standing by itself distinctive, as it is simply the French word for Japanese, the Court finds that the composite JAPONAIS mark is distinctive by viewing the mark as a whole, including the use of stylized Gill Sans font, and the removal of the crossbars from the two occurrences of the letter "A." *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 383 (2d Cir. 2005) (holding stylized "O" on vodka bottle protectable as inherently distinctive mark); *Courtenay Commc'ns Corp.*

*v. Hall*, 334 F.3d 210, 215-16 (2d Cir. 2003) (district court erred in concluding that use of mark iMARKETING was generic without considering design and typeface elements; party entitled to trademark protection for composite mark as a whole).

Next, the Court proceeds to determine whether or not there is a likelihood of consumer confusion. In order to determine whether there is a likelihood of confusion, a court must balance the eight factors set forth by the Second Circuit in *Polaroid Corporation v. Polarad Electronics Corporation*, 287 F.2d 492 (2d Cir. 1961), which are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Star Indus.*, 412 F.3d at 384.

Here, the parties do not dispute the fact that there is a likelihood of confusion between their respective uses of the mark, because they are using an *identical* distinctively styled JAPONAIS mark for *identical* restaurant and lounge services–rather, the question for the court is the extent to which the parties had priority to use the JAPONAIS mark.[12] *Menashe*, 409 F. Supp. 2d at 422-23 ("Where, as here, the marks and goods are nearly identical, however, the focus in the second step

shifts from likelihood of confusion to basic rules of trademark priority to determine use and ownership of the mark."); *Buti v. Impressa Perosa, S.R.L.*, 935 F. Supp. 458, 468 (S.D.N.Y. 1996) ("[W]hen two or more companies adopt the same mark, basic rules of trademark priority determine use and ownership of the mark.") (internal citation and quotation marks omitted). In any event, the Court independently finds that there is a likelihood of confusion in the instant case based on powerful presumptions of customer confusion because: (1) the parties are using *identical* marks; and (2) the Court's factual finding that Tuccillo *intentionally* copied the JAPONAIS mark.[13] *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 274 (S.D.N.Y. 2002) (finding that where two marks are identical and used for the same product, consumer confusion is "inevitable"); *Pappan Enter. Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir. 1998) ("where the identical mark is used concurrently by unrelated entities, the likelihood of confusion is inevitable");

_____

[12] That the likelihood of consumer confusion is not in dispute in the instant action is highlighted by the fact that the parties have alleged causes of action for trademark infringement against each other for use of the same mark.

[13] The Court notes that in addition to the presumptions created by the fact that the marks used are identical and adopted in bad faith from Tuccillo's intentional copying, other *Polaroid* factors counsel strongly in favor of a finding of likelihood of confusion, including: (1) the strength of the JAPONAIS mark based on the distinctive stylization; (2) the proximity of the products, given that they are for identical restaurant and lounge services; (3) that there is no need to "bridge the gap" because the products are already in the same market; and (4) quality of the products, given that Geisha operates a fine dining restaurant and Tuccillo operates a fast-food lunch establishment. Although no evidence was presented to the Court regarding actual confusion and sophistication of consumers, the Court finds that there is a likelihood of confusion based on the six *Polaroid* factors which strongly support such a finding.

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) ("Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion.").

Because there is a likelihood of consumer confusion, the Court must next determine the parties' respective rights to use the JAPONAIS mark. As a threshold matter, based on the Court's finding of fact that Geisha was the first to use the JAPONAIS mark in commerce in the United States, in connection with the Japonais restaurant in Chicago, Geisha is the *senior user* of the mark. *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 405 (D.N.J. 2008) ("As between two competing users, the senior user is typically the first to use the trademark anywhere in the United States."); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175 (JSM), 2001 WL 170672, at *7 (S.D.N.Y. Feb. 21, 2001) (defining "senior user" as party to first use PATSY'S mark in connection with a restaurant operation); 5 J. McCarthy, Trademarks and Unfair Competition (4th ed. 2009) (hereinafter "McCarthy") § 26:1. However, because Geisha as senior user never registered its mark with the USPTO, the territorial extent of its rights is not unlimited. *Emergency One, Inc. v. Am. Fire Eagle Engine, Co., Inc.*, 332 F.3d 264, 268 (4th Cir. 2003) (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415-16 (1916) ("Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose name is pirated by an infringing use be entitled to protection and redress. But this is not to say that the proprietor of a trademark . . . can monopolize markets that his trade has never reached. . .")).

Accordingly, a federal common law doctrine has developed for unregistered marks under the pre-Lanham Act *Tea Rose-Rectanus* lines of cases, which stands for the proposition that a senior user cannot enjoin a junior user's use of a mark if the junior user can prove that it: (1) first used the mark in a geographically remote location, defined as an area in which the senior user's mark was not known such that there would be confusion as to source; and (2) the junior user's first use of the mark was in good faith. *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 84 (S.D.N.Y. 2003); *accord Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 876 (E.D.N.Y. 1978); *see also Geisha LLC v. Tuccillo*, No. 05-CV-5529, 2009 WL 674360, at *4 (N.D. Ill. Mar. 13, 2009) ("The general rule is that a junior user who is unaware of the senior user's use may adopt a mark in a geographically distinct area, provided that the mark has not been registered."); *see also* McCarthy § 26:4 (collecting cases accepting the *Tea Rose-Rectanus* doctrine, including within the Second Circuit).

The Court finds that Geisha is likely to succeed on the merits of demonstrating that it first established common law trademark rights in the JAPONAIS mark in the New York metropolitan area, such that Tucciilo cannot argue that he used the mark first in a geographically remote location pursuant to the *Tea Rose-Rectanus* doctrine. The Court finds that Geisha obtained common law trademark rights in the JAPONAIS mark in New York, based upon its use in connection with opening and operating the Japonais restaurant in Manhattan as of 2006.[14] In fact, Tuccillo, the

---

[14] Although the New York restaurant was operated by Geisha NYC LLC, a separate legal entity from Geisha LLC that owned the common law rights to the JAPONAIS mark, Geisha NYC LLC was authorized to use the mark by Geisha LLC, and the trademark priorities of the parties may be merged together because of their

junior user, has only claimed that he first used the JAPONAIS mark in commerce as of April 1, 2008, through his SOU application with the USPTO. Tuccillo's only basis for arguing that he obtained common law trademark rights prior to 2006 is by virtue of a presumptive priority date of June 25, 2004 by virtue of his ITU application.[15] 15 U.S.C. § 1057(c); *WarnerVision*, 101 F.3d 260 ("If, but only if, the mark completes the registration process and is registered, the ITU applicant is granted a constructive use date retroactive to the ITU filing date."); *Geisha LLC*, 2009 WL 674360, at *4 ("[T]he advantage to filing an [ITU] application . . . is that, if the party who has filed such an application begins using the mark in the statutory period, the mark will be registered and the date the [ITU] application was filed will be deemed the effective first date of use."). However, because the Court has determined that Geisha is likely to prevail on the merits of its cancellation cause of action, as discussed *supra*, Tuccillo cannot rely on the ITU application to establish priority and presumptive first use. In the absence of Tuccillo's registration, Geisha was plainly the first to establish common law trademark rights in the New York metropolitan area as of the opening of the Japonais restaurant under the JAPONAIS mark in 2006.[16]

Alternatively, in the absence of Tuccillo's federal registration, Tuccillo never developed common law rights in use of the JAPONAIS mark, regardless of the timing of his first use in the New York metropolitan area, because he only employed the mark in bad faith. *Johanna Farms*, 468 F. Supp. at 876 ("If it is found that the junior user did not adopt the mark in good faith, he will not be accorded the right to exploit the mark, even in areas previously untouched by the senior user."). Because the Court has made the factual finding that Tuccillo was *aware* of Geisha's use of the mark when he copied it, he did not have the requisite good faith when he adopted the mark, even assuming *arguendo* that Geisha's trademark rights under the common law had not yet extended to New York. *See*

_____

[15] The Court rejects Geisha's argument that it developed common law rights in the New York metropolitan area prior to Tuccillo's ITU application as unsupported by the record developed at the preliminary injunction hearing. Geisha only appears to have only offered five samples of national publications that predated June 2004, and none appear to have incorporated the JAPONAIS mark. (Def.'s Ex. 17.)

_____

overlapping ownership and the fact that they were presented to the consuming public as one entity. *See, e.g., Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997).

_____

[16] Tuccillo's argument that the Memorandum & Opinion in the related litigation in the Northern District of Illinois determined conclusively that Tuccillo developed common law rights in New York before Geisha is wholly without merit. *See Geisha LLC v. Tuccillo*, No. 05-CV-5529, 2009 WL 674360, at *4 (N.D. Ill. Mar. 13, 2009). In that decision, the Court was faced with a motion for summary judgment, and thus in a completely different procedural posture, which merely determined that there was a material issue of disputed fact such that summary judgment was not warranted. In the instant case, the Court is faced with a motion for a preliminary injunction, and is competent to make findings of fact and credibility determinations. Whereas Judge Pallmeyer was compelled to assume the validity of the ITU and other evidence submitted by Tuccillo, this Court, in the context of a preliminary injunction hearing, had the authority to make findings of fact that form the basis of a likely meritorious cancellation claim for Geisha, and eviscerate the presumptive priority established by the ITU application.

*id.* at 877 (actual notice negates an inference of good faith); *see also* McCarthy § 26:9 ("It appears that the majority of case law adopt the view that proof of the junior user's knowledge of the senior user's mark at the critical date is sufficient to destroy the 'good faith' element of the territorial defense.")[17].

Accordingly, the Court concludes that Geisha is likely to prevail on the merits of its trademark infringement claim under 15 U.S.C. § 1125(a).[18]

### C. Balance of Hardships

In the alternative, the Court finds that at a minimum, for the reasons discussed *supra* regarding likelihood of success on the merits, Geisha has also demonstrated sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation. *See, e.g., Estee Lauder Cos., v. Batra*, 430 F. Supp. 2d 158, 182 (S.D.N.Y. 2006).

The Court also finds that the balance of hardships weigh decidedly in Geisha's favor. As the Court will discuss *infra*, Geisha will suffer irreparable harm in the absence of preliminary injunctive relief, including the potential destruction of its business. *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979) (holding that risk that the party seeking the preliminary injunction will have its business destroyed *pendente lite* demonstrates a balance of hardships in favor of the moving party). In addition, the Court notes that in light of its finding that Tuccillo knowingly copied and used a stylized mark developed by another party, he assumed this risk, and any potential loss suffered by a preliminary injunction was self-imposed. *Novartis Consumer Health, Inc. v. Johnson & Johnson Consumer Pharam., Co.*, 290 F.3d 578, 596

---

[17] The Court recognizes that there is another line of cases which is gaining ground, standing for the proposition that junior user knowledge alone is not sufficient to destroy good faith for the purposes of the *Tea Rose-Rectanus* doctrine. *See, e.g., Architemps, Inc. v. Architemps, Ltd.*, No. 88-CV-5152, 1989 WL 80300, at *2 (S.D.N.Y. Apr. 16, 1989) (mere knowledge of the existence of the prior user, does not, by itself, constitute bad faith); *see also* McCarthy § 26:10 (collecting cases and noting "growing body of cases adopting the view that the junior user's knowledge is not determinative, but is merely the first step in an enquiry into 'bad faith'"). Although the Court agrees with the majority of cases, and with Professor McCarthy's commentary that junior user knowledge of a senior user's mark may operate as either powerful surrogate evidence of customer perception or an intent to cause consumer confusion, *see* McCarthy § 26:12, the Court alternatively finds that Tuccillo had "bad faith" under the minority rule because his behavior indicated an intent to squat on the mark, and to take advantage of Geisha's failure to obtain a prompt registration of the JAPONAIS mark to capitalize on the goodwill built by Geisha in connection with its mark. *See, e.g., GTE Corp. v. Williams*, 904 F.2d 536 (10th Cir. 1990) ("While a subsequent user's adoption of a mark with knowledge of another's use can certainly support an inference of bad faith, . . . mere knowledge should not foreclose further inquiry. The ultimate focus is on whether the second user has the intent to benefit from the reputation or goodwill of the first user.").

[18] Because the Court has determined that Geisha is likely to succeed on the merits of its cancellation claims and trademark infringement claims, which establish sufficient basis for the injunctive remedy they seek, the Court refrains from analyzing the likelihood of success of Geisha's claims for trademark dilution under 15 U.S.C. § 1125(c) and unfair competition under New York common law.

(3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."); *Johnson & Johnson-Merck Consumer Pharam. Co. v. Procter & Gamble Co.,* 285 F. Supp. 2d 389, 394 (S.D.N.Y. 2003) (noting no real hardship to defendant resulting from injunction other than loss of money from activity "it probably should not have engaged in to begin with").

Apart from this Court's finding that Tuccillo brought any harm resulting from a preliminary injunction upon himself, the record otherwise overwhelmingly supports the proposition that Geisha's business is orders of magnitude more invested and reliant on the JAPONAIS mark than is Tuccillo's. Specifically, whereas Geisha has built its goodwill and reputation under the JAPONAIS for six years, the Court has made the factual finding that Tuccillo has only *at most* actually operated a restaurant under the JAPONAIS mark since April of 2009. Whereas Geisha has invested over two million in marketing its Chicago, New York and Las Vegas restaurants under the JAPONAIS mark, the record only indicates that Tuccillo has only invested approximately one thousand dollars in promotion of the JAPONAIS mark, between the window lettering and recently installed awning. Whereas Geisha has provided documentary evidence of substantial revenue at its New York restaurant under the JAPONAIS mark (Def.'s Exs. 26-28), Tuccillo has not proffered a *single* receipt or any other documentary evidence of any kind supporting any restaurant and lounge revenue under the JAPONAIS mark.[19] Finally,

whereas Geisha operates its restaurants exclusively under the JAPONAIS mark, Tuccillo relies on a multitude of tradenames and marks for his related frozen seafood businesses he operates out of 28 Urban Avenue.

Accordingly, the Court finds that Geisha has met its burden to demonstrate sufficiently serious questions on the merits and a balance of hardships weighing decidedly in its favor.

## D. Irreparable Harm

Because Geisha has demonstrated a likelihood of success on the merits on their cancellation and trademark infringement actions, or at the very least sufficiently serious questions going to the merits and a balance of hardships weighing decidedly in its favor, the Court proceeds to address whether Geisha would suffer irreparable harm if it is not provided with provisional relief through a preliminary injunction pending a trial on the merits. As set forth below, the Court finds that Geisha will in fact suffer irreparable harm on those claims without preliminary injunctive relief.

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuono*, 175 F.3d 227, 2343 (2d Cir. 1999) (per curiam) (internal quotations omitted). "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). In addition, the mere possibility of harm is not sufficient. *Id.* "A successful plaintiff must demonstrate that absent interim relief it will

---

[19] When asked for documentation of any proceeds that can be directly attributable to his Japonais restaurant, as opposed to his many other businesses, plaintiff stated that none existed in Japonais' name and responded, "if I needed to be so precise, you know, to try to prove my case, or, you know, I would – that's what I did. That was my course.

That's the course of business." (Tr. at 229-30.)

suffer an injury that is neither remote nor speculative, but actual and imminent." *Consol. Brands Inc. v. Mondi*, 638 F. Supp. 152, 155 (E.D.N.Y. 1986).

Analysis of irreparable harm in trademark actions is guided by the well-established principle that there is a presumption of irreparable harm where there exists a likelihood of consumer confusion. *Weight Watchers Int'l, Inc., v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("A plaintiff who establishes that infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury."); *accord* McCarthy § 30:47 (collecting cases). "This presumption may be defeated, however, when a party has delayed in seeking injunctive relief." *Weight Watchers Int'l*, 423 F.3d at 144 (citing *Tough Traveler, Ltd., v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler*, 60 F.3d at 968.

The Court finds that Geisha is entitled to a presumption of irreparable harm, because, as found *supra,* there is a strong likelihood of consumer confusion based on Tuccillo's use of the identical JAPONAIS mark for identical restaurant and lounge services.[20] Indeed, in accordance with the Court's findings of fact, Geisha has invested approximately twenty million between the restaurants in Chicago, New York and Las Vegas, including over two million in advertising using the JAPONAIS mark. The goodwill built by Geisha based on substantial investment in the past six years is directly jeopardized by Tuccillo's identical use of the JAPONAIS mark, which is likely to cause consumer confusion, for "fast food"-type restaurant services that stands to tarnish the fine-dining reputation that Geisha has worked diligently to establish.[21] *See, e.g.,*

---

[20] The Court finds that the presumption of irreparable harm is applicable to the instant case, regardless of the timing of the instant motion for preliminary injunction, because it finds Geisha has diligently and continuously attempted to prosecute its rights as against Tuccillo's use of the JAPONAIS mark, as soon as they had actual notice of Tuccillo's actions. Shortly after Geisha learned that Tuccillo filed its ITU, it filed the action in the Northern District of Illinois on September 26, 2005, attempting to prevent Tuccillo's registration of the mark. In addition, Geisha moved for cancellation of Tuccillo's registration of the JAPONAIS mark on March 23, 2009, less than a week after the registration was issued on March 17, 2009, and also moved for a preliminary injunction within a week of filing its answer and counterclaim against Tuccillo in the instant litigation.

[21] As the Second Circuit stated in *Omega Importing Corporation v. Petri-Kine Camera Company*, 451 F.2d 1190, 1195 (2d Cir. 1971), in reversing a district court's denial of a motion for preliminary injunction:

Where there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows. While an injured plaintiff would be entitled to recover the profits on the infringing items, this is often difficult to determine; moreover, a defendant may have failed to earn profits because of the poor quality of its product or its own inefficiency. Indeed, confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors. Yet, to prove the loss of sales due to infringement is also notoriously difficult. Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming district court's finding of irreparable harm based on findings that absent specific relief, applicant would suffer loss of reputation, good will and business opportunities).

In addition, the Court believes that there is a greater urgency to provide provisional relief to Geisha based on the likelihood of confusion in light of specific economic conditions–given the fact that the restaurant's revenues have been significantly depressed and that Geisha NYC LLC has been subject to demands from its landlords and investors, its continued ability to operate is threatened by any consumer confusion which stands to cause it to lose further business, dilute or tarnish its reputation. *Tom Doherty Assoc., Inc. v. Saban Entmt. Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("We have found irreparable harm where a party is threatened with the loss of a business.").

Accordingly, the Court finds that Geisha has satisfied its burden to demonstrate that it will suffer irreparable harm if provisional relief is not granted.

IV. CONCLUSION

The Court concludes that for the reasons stated above, Geisha is entitled to a preliminary injunction against Tuccillo's use of the JAPONAIS mark for restaurant and lounge services, because Geisha has met its burdens to establish that: (1) it will suffer irreparable harm if preliminary injunctive relief is not granted; and (2)(a) a likelihood of success on the merits of its causes of action for cancellation of Tuccillo's registration of the JAPONAIS mark as well as trademark infringement under 15 U.S.C. § 1125(a); or, in the alternative, (b) sufficiently serious questions going to the merits

(internal citations omitted).

of its claims for cancellation and trademark infringement, and a balance of hardships tipping decidedly in its favor.

The Court proceeds to determine the scope of the injunction that should issue. It is well-settled that under Rule 65(d) of the Federal Rules of Civil Procedure, the Court must provide reasonable detail regarding the terms of the injunction. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004) ("A preliminary injunction is a specific equitable remedy and, thus, must be framed in such a way as to strike a delicate balance between competing interests. By necessity, the scope of the injunction must be drawn by reference to the facts of the individual case, reflecting a careful balancing of the equities.") (internal citation and quotation marks omitted). Because Geisha has shown a likelihood of success on its trademark infringement claim under the common law, and such rights for unregistered marks are limited geographically, the Court exercises its discretion to limit an injunction of Tuccillo's use only to the areas in which Geisha has demonstrated a likelihood of success in establishing common law trademark rights, which according to the Court's factual findings, include the New York, Chicago and Las Vegas metropolitan areas. *See, e.g., Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 360-61(6th Cir. 1998) (district court only entitled to grant injunction based on common law trademark rights to geographic areas within the scope of defendants' trade territory).

Next, in connection with the issuance of the preliminary injunction, the Court is required to mandate that Geisha post a bond, pursuant to the command of Rule 65(c) of the Federal Rules of Civil Procedure:

The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

FED.R.CIV.P. 65(c); *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (Rule 65 "allows a preliminary injunction to become effective only upon the applicant's positing of an amount that the district court determines adequate"). As part of this preliminary injunction, Tuccillo will be required to remove or cover promotional materials that incorporate the JAPONAIS mark at 28 Urban Avenue, which include, *inter alia*, the window sign, and the recently-installed awning. Since the evidence presented at the preliminary injunction hearing demonstrated that these promotional items cost Tuccillo approximately one thousand dollars cumulatively (Pl.'s Exs. 5 & 10), and since Tuccillo did not submit any evidence regarding the amount of profits generated at 28 Urban Avenue for restaurant and lounge services under the JAPONAIS mark, the Court finds that a $25,000 bond is sufficient to cover all potential costs and damages that Tuccillo may incur if it is later found that he was wrongfully enjoined.

In accordance with the foregoing, IT IS HEREBY ORDERED that Geisha's application for a preliminary injunction is GRANTED as follows:

1.   During the pendency of this action, Tuccillo, his agents, and all other persons in active concert or participation with him, and any corporation in which he has a controlling interest, is hereby enjoined from making use of the JAPONAIS mark, or any other mark or name likely to cause confusion with the JAPONAIS mark in commerce in the New York, New York, Chicago, Illinois and Las Vegas, Nevada metropolitan areas, incorporating all areas within a 100 mile radius from the city limits of each, and which necessarily includes Westbury, New York. Tuccillo is allowed one week to effectuate this order.

2.   This preliminary injunction is subject to the filing by Geisha of a bond in the amount of $25,000 for the benefit of Tuccillo to cover any costs or damages incurred by the issuance of this preliminary injunction. This undertaking should be filed within twenty days of this order. If there is not timely filing of the bond, Tuccillo is permitted to return to this Court and make an application to vacate the preliminary injunction.

3.   This injunction shall remain in effect until further order of this Court.

SO ORDERED.

_____
Joseph F. Bianco
United States District Judge

Dated:  July 22, 2009
Central Islip, New York

* * *

The attorney for plaintiff/counterclaim defendant is Arnold L. Kert, Esq., 666 Old Country Road, Garden City, NY 11530. The attorneys for defendants/counterclaim plaintiffs are Sean P. Casey, Esq. and James R. Ferguson, Esq. of Mayer Brown LLP, 1675 Broadway, New York, NY 10019.